Good morning and welcome to the 4th Circuit. Judge Wynn and Judge John Gibney and I are very pleased to have you here. Our first case today is Westmoreland Coal Company v. Herskel Stallard. Mr. Sheriff. May it please the court. Esteemed members of the bench, my name is Fuzzle Share and I'm counsel for Westmoreland Coal Company. Your Honor, this is what some might call just a blackmail case. But what we have here is not just considerable legal errors but a rather cavalier and church attitude shown by the ALJ in trying to comprehend the medical facts and the testimony of the case. These flawed findings by the ALJ were subsequently rubber stamped by the Benefits Review Board and approved. You are a last line of defense and I literally mean that. Well first we have, Your Honor, is a clear cut disregard of statute of limitations. Now that part of the argument is clear. How is there a clear disregard though when no doctor ever, it seems to me, ever made the causal connection to Mr. Stallard. He was told that he had lung disease by one doctor. He was told that he should retire by another doctor after he had carbon monoxide poisoning. But nobody told him that he was disabled due to pneumoconiosis, did they? Yes, Your Honor, they did. Where in the record do you have a doctor telling you that? Let me give you two examples. I'll first address your question and then I'll show you another example where the cavalier disregard is shown. In this case, let's see what we have here. There is a clear cut intimation that you have black lung. The minor was told. And this circuit has held that it doesn't have to be in writing. It can be orally communicated to the minor. Right, but I'm talking about that causal connection. You'd help us if you could address that. Causal connection cannot be clear. A minor is told, you have black lung, which means pneumoconiosis for all intents and purposes. Right, but the doctor said it wasn't that bad. It would get worse, but it wasn't that severe. A separate doctor did say that. And this is a progressive disease. The doctor wasn't wrong. That was Dr. Main. Exactly. But Dr. Main also told him that he had black lung, which means pneumoconiosis. And Dr. Dorman told him he's permanently disabled. But show me in the record, if you could, because this is what we need to know. Is there a doctor who told him that he was permanently disabled due to pneumoconiosis? Again, that causal relationship. It seems to me that if there is a flaw in what you're saying, the flaw is that you're asking the minor to make that connection. And I don't know that the law requires him to. Two things in response to that wonderful question. Number one, we believe the causal connection is made. Once you're told that you have pneumoconiosis and you're completely disabled. The question is, where in the record does it say A caused B? There is no such statement in the record. But he's clearly told you have this disease and you're completely disabled. And second thing the judge gave me that I must point out, and this was not raised in our brief and I apologize for that. But a coal miner, a claimant, just like any other plaintiff in any civil litigation, has a duty to reasonably investigate his claim. Many different benefits review board decisions have held that. Many different. And this is what they have said. So he had an obligation to go and do medical research to connect A and B? No, Your Honor. He has a reasonable duty to investigate his claim. The exact language used in these BRB decisions was the terminology used is the medical determination must be such that the miner was aware or in the exercise of reasonable diligence should have been aware. You're told you have pneumoconiosis. You're told you're disabled. You're permanently disabled. Things are not going to get any better. He should have brought his claim. He waited 18 years after he was told to do that. So we believe that causal link was made. Secondly, Your Honor. Before you leave, the problem you have is everything you say could be true. But the question is whether there is substantial evidence to support ALJ's factual findings. So the ALJ very well, and they did the statistics, told us that you could put two and two together. You could have determined that this black lung was attributed to your disability. But even if we accept that to be true from the appellate perspective, the issue before us, is there substantial evidence to support the ALJ's findings? We could very well agree with you. That doesn't help you if there is substantial evidence to support the ALJ. Is that not the problem in this case from your perspective? I think that's well put, Your Honor. But once again, the ALJ is the fact finder in this case. He's presented evidence that a person is told, you have pneumoconiosis. But that's not all the evidence he was presented. It wasn't. But this was a threshold issue. The statute of limitations is a threshold issue. It should have been resolved first. And he should have decided that his claim was time barred. He did. He said you could put two and two together. And you could have come to this determination. But there is other evidence in this case. And it is substantial to the court that I find to the contrary. There was no such evidence, Your Honor. It was clear that he had been told by a physician. That's our position. It's laid out in our briefs. And I believe it's correct. You have been told you have a disease. The disease for which you're bringing a claim. And you have been told.  He was also told that he had black lung. He said you have early stage black lung. It's going to get worse. He did say that too, Your Honor. But he also said you have black lung. Subsequently he said, which any doctor should have said, this is going to get worse. But he was told that he had black lung. Secondly, Your Honor, let me just point out to the cavalier disregard. When we go to the smoking history part. Now, again, let's look at the case here. Well, but here, as Judge Wynn said, the substantial evidence rule kind of gets in the way of this argument. What you're doing here on all these issues, it seems to me, is re-arguing the case that you, according to you, should have won at the ALJ. And maybe it's the way you should argue. But as long as there's substantial evidence, our hands are kind of tied. Your Honor, we believe that a prudent fact finder, once shown the evidence that was shown in this case, that the claimant had the disease in question. He was disabled. That should have been the end. He should have had reasonable diligence to bring this claim timely. We agree. It's our job to prove it's not timely filed. A claimant is presumed to have filed it timely. We don't disagree with any of this. Are you abandoning your other claims, then, because you think you admit they're supported by substantial evidence now? No, Your Honor, not at all. I mean, in any statute of limitations case. No, I understand. But getting past the statute of limitations, don't you agree that there's evidence that supports the decision on all the other issues? No, Your Honor.  No, we disagree, Your Honor. We believe that at that point in time, he had enough evidence to bring his claim, and he had reasonable diligence requirements to do so. He did not do that. But to get back to Judge Keenan's point also about the statute of limitations question. That's correct. My question was on the other questions. Do you agree that there's evidence in the record that supports a decision against your client? No, Your Honor. Well, what about Dr. Ronald Clayton? I mean, he said that Mr. Stallard had legal pneumoconiosis, and his testimony is pretty detailed. Why isn't that substantial evidence? Because, Your Honor, there was much more evidence to the contrary. More evidence is not the question. The question is whether there's substantial evidence, substantially more. There is substantial preponderance of the evidence that in this case, there was a tremendous smoking history. Well, you know, I'm just a poor old district judge. And I give instructions all the time that say, you know, it doesn't matter who has the most evidence. It's what you believe. And that's why we have the ALJ who's on the scene to decide. You're absolutely correct, Your Honor. But he's also a prudent fact finder who should be applying the law and the totality of the medical evidence and then weighing the totality. Here, there are doctors who are saying one thing and the other. That is a classic example of a fact finder put in a position where he has to examine the totality of the evidence. And the totality of the evidence is in our favor. To get back to Judge Keenan's question about a caveat, let me just point this out, Your Honor, about the smoking history. So we have 40 years of smoking history coming from the Wellmont CVA Heart Institute and the Pulmonary Associates of King County. These are not entities hired by the employer. These are independent medical entities. The ALJ concluded that the claimant had a two to four-pack year history based on his statement at the hearing. This is one-fifth of what Dr. Clayton said and one-twentieth of what those independent medical entities said. But Dr. Belay, who testified, I mean, whose examination was in evidence, said that Stallard's smoking history was not significant. He said non-significant in terms of his disease. So why wasn't that, again, evidence? Because, again, that's just one piece of the evidence that the judge had to evaluate versus actual medical records outlining 40-pack years of history. Now, but look what the ALJ did, Your Honor. It doesn't stop there. And the director points this out. The director points it out. The ALJ said, you know what, guys, employer? You were jumping up and down and saying that the claimant has an excellent memory when you were arguing statute of limitations. Well, now I'm going to rely on his excellent memory and say he has a two to four-pack year history. That is cavalier, Your Honor. He has to evaluate the total medical evidence in this case. And just because a person has an excellent memory does not mean that his testimony should be taken at face value when it contradicts actual medical facts, independent medical facts showing 40-year history. Besides, Your Honors, another issue, this could have been harmless error if he had just simply made a mistake on smoking history. But it doesn't stop there. He actually says that Dr. Zaldivar and Dr. Rosenberg relied on improper smoking history when they're relying on what the independent medical entities said. And he goes on to say that, and he cites the Trumbo case and said the Trumbo case says that when you rely on the wrong medical history, you're out. So here we have a judge who's playing this gotcha game. Look, you said he had great memory. Now he's saying two to four years. That's what I'm going to use. I'm going to ignore the Belmont, a C.V. Harden student, Palmier's argument. Somebody, an excellent lawyer would have made before the ALJ. You know, that part of the game is kind of done by now. I don't know what arguments were made, Your Honor. I believe they were all made there. I was not making the argument. I understand. But they weren't made as forcefully as with the great articulation you did. Well, thank you, Your Honor, but I really don't know that. Anyway, proceeding along, Your Honor, the ALJ also incorrectly discredited medical opinions from the simple fact that they were contrary to the idea of the mere possibility of coal dust exposure causing impairment. Okay? Now, let's see what happened in this case. The ALJ did weigh the evidence and found there was no clinical pneumoconiosis. Okay, so all the relevant facts, all the clear, crisp medical data is showing no clinical pneumoconiosis. So the only thing at issue now is legal pneumoconiosis. And now, we are not arguing. We didn't argue back then and we are not arguing today that the preamble and the regulations state that the effects of cigarette smoking and coal mine dust are additive. We're not arguing that. But they are not always additive. They could be additive, of course. They could be additive. But if the medical data shows that there are simply other causes for this disease, then the additive part doesn't become an absolutely irrebuttable presumption. Now, the other argument has been made, Your Honor. Well, you do realize you're eating into your rebuttal time. I just want to make sure you know that. Oh, I'm sorry. Yeah. I mean, it's okay. You can keep talking. I will stop right there and I'll use the rebuttal. Thank you so much. Thank you. Mr. Joyner. Good morning, Your Honors. May it please the Court, my name is Barry Joyner, and I represent the Director of the Office of Workers' Compensation Programs. The ALJ in this case correctly found that Mr. Stallard's claim is timely filed. Under the Black Lung Act, all claims are presumed to be timely filed. It is the burden of the party opposing entitlement to prove that a minor was informed more than three years before he filed a claim that he was totally disabled by black lung disease. That did not occur here, as the panel has recognized. No physician back in the 1990s told Mr. Stallard that he was unable to return to coal mining because of his black lung disease. What about his argument in which he says that it was Mr. Stallard's job to put two and two together and figure out that black lung caused his disability? I don't think even if that were true, Your Honor, which I don't believe it is, it's not a question of what Mr. Stallard thinks. It's a question of what he was told. It's a fairly objective standard. What did the physician inform him of? That there's simply not something here that Mr. Stallard could make that connection from. It's important to remember Mr. Stallard had not only black lung disease. He had also suffered severe carbon monoxide poisoning, the effects of which were lingering and which is what actually caused him to leave coal mining. If he's told that he has – if he knows he has two diseases and he has – and he's separately told that he's disabled, how is a minor who is not a medical professional able to make that connection? He's got three doctors. He's got three doctors. Two of those doctors confirmed he was permanently disabled. No, Your Honor. Only one of the doctors said he was permanently disabled. Dr. Dornan told him he was totally disabled. Dr. Dornan told him he was permanently disabled. That is correct. Dr. Romaine says you have black lung disease. It will get worse and worse and you should leave your job. Yes, sir. But that's not the same thing as saying you are unable to do your job. And the other doctor, Dr. Esposino, also simply told him you should stop coal mine employment because of the effects on your health. But neither one of those physicians told him that he was unable to do coal mine employment because of his black lung disease. And that's the key. Was a physician or did a physician inform him that because of his black lung disease he was then unable to continue coal mine employment? So if a doctor says you're unable to go back to work, and another one says you have black lung disease, that's not enough. I don't think so, Your Honor, particularly in this circumstance where Mr. Stallard had another significant pulmonary condition in the form of carbon monoxide poisoning. I believe the records also indicate that in the early 90s he was suffering heart problems and I believe had two stents put in back then as well. He had a significant number of health problems, and I don't think there was any way for him to determine from the medical opinions that he received that he was totally disabled on account of his smoking seems to be so much of a habit of mine. The cases I see here look like every one of them is just about smoking. But in this instance you're saying that smoking in and of itself is definitely the cause of the disability, yet he's told you have black lung disease too. The fact that the doctors did not connect the two groups of saying your disability is due to the black lung, you're saying the statute doesn't run until someone tells him that. That is correct, Your Honor. That is what the legal standard is. The minor has to receive a diagnosis of total disability due to black lung disease in order to trigger the running of the statute. And that simply did not happen. So you're relying then on the statute itself and the Black Lung Act, 932F, plus the regulation that says it has to be communicated to the minor. That is correct, Your Honor. Yes. Okay. What about this issue about the smoking? It seems to me that that really is the weak part of the ALJ's analysis because, you know, as Mr. Scherz indicated, the evidence is all over the map. Your Honor, I think the evidence is fairly consistent that the length of time that Mr. Stallard smoked was about 40 years. The real dispute is how much he smoked on a daily basis during that 40-year period. And the medical records are indeed, as you say, all over the place in terms of whether he was smoking a pack of cigarettes each day. And, you know, the reports often refer to pack years. That is smoking one pack per day for a whole year. Or did he only smoke one or two cigarettes a day for a year? There's some medical reports that indicate that it was a small amount per day, some reports that say a large amount a day. Now, Mr. Stallard sat before the ALJ and testified under oath as to the amount that he smoked. The ALJ, as the fact finder, observed him, observed his demeanor, listened to what he had to say, and determined that he was a credible witness. And that is very much within the ALJ's discretion to do that. That's his role. And he said, all right, I believe what Mr. Stallard says. That's how I'm going to resolve the conflict here in the evidence. I'm going to rely on the credible testimony of the man who was sitting in front of him. What made him credible? Were his medical records contradicting what he said? Some of the medical records were different than what Mr. Stallard testified, Your Honor. Some of them did indicate that he was smoking a pack of cigarettes a day. Other medical records indicated that he was smoking significantly less. As Judge Keenan pointed out, Dr. Goli said that the smoking history was insignificant. Other medical records indicate that he smoked only intermittently over that time. So there was indeed a conflict in the medical records. And the ALJ, he had to resolve that conflict in order to make a finding, and he relied on the testimony of Mr. Stallard. And that's what judges do. That's what fact finders do. They evaluate the evidence, and the ALJ here properly decided that Mr. Stallard was credible. And relied on his testimony. The primary issue in this case involves a question of rebuttal of the presumption of legal pneumoconiosis. I think it's important to remember the legal context here. This case is governed by the so-called 15-year presumption. Mr. Stallard worked for 15 years and either more than 15 years in either underground mining or in very dusty surface mining, and everybody agrees now that he has a totally disabling pulmonary impairment. Because of that, he is presumed to have pneumoconiosis. The ALJ found that Westmoreland Coal was able to establish that he does not have clinical or medical pneumoconiosis. That is, his X-ray evidence is essentially negative. But the company failed to prove that he does not have legal pneumoconiosis, the broader category of any dust disease caused by coal dust exposure. And what they relied here primarily on was the report of Dr. Rosenberg. And Dr. Rosenberg primarily relied on this theory of his that if a miner has a preserved what's called an FEV1-FBC ratio, that is the amount of air he can blow out in one second compared to the total amount of air he can blow out, Dr. Rosenberg says that if that ratio goes down, which it did here with Mr. Stallard, that's a sign of smoking. And that if a miner has a coal dust-related obstructive lung disease, that that ratio will stay the same. But there's no foundation for that opinion. The decline in the ratio of the FEV1 to FBC is a hallmark of chronic obstructive lung disease, regardless of cause. That is stated in the preamble to the regulations. That's the finding of what is referred to as the GOLD Committee, the Global Initiative on Obstructive Lung Disease. It seems that when you say no foundation, it sort of sounds like a Daubert type determination. But this wasn't a Daubert determination, was it? No, Your Honor. The Daubert line of case and authority really doesn't apply. Those sorts of rules of evidence, evidentiary principles, are not necessarily governing in black lung cases. But it was the ALJ's role to look at it. Well, Your Honor, the court has recognized for some years now that the ALJ can look at the preamble to the regulations that the department published when it published the 2001 regulations in looking at medical reports to determine whether they are credible. In this here, the preamble indicates that obstructive lung disease is characterized by a decline in the FEV, FBC ratio, regardless of cause, and that the effects of both smoking and coal dust on obstructive lung disease are similar. Now, a physician can have a contrary viewpoint, but he's got to have something to back that up. Here, Dr. Rosenberg didn't have that. He did not have a single study that looked to compare the results of smoking and coal dust. He relied on some studies that looked only at smoking, and this court recognized in the Cochran case that's really not enough to overcome the preamble to simply look at studies that talk only about smoking. You've got to have something that compares smoking and coal dust, and Dr. Rosenberg didn't have that. Your Honors, I see my time is up. If the panel has any other questions, I'd be happy to try to answer them. Thank you, Your Honors. Thank you, sir. Mr. Wolfe? May it please the Court, I'm Joe Wolfe, and I've represented Herschel Stallard. I think his family pronounces Herschel, the K, as sort of silent through the three levels of adjudication, both at the director level, the ALJ level, and, of course, the BRB level. And in summary here, we think that overall the RO and their evidence they provided in this case simply just fails to meet their burden as to overcome the presumption of timeliness, to overcome the 15-year presumption, and, of course, to overcome the judge's reasoned opinion in this case. And doing these cases, and, of course, you've got to realize Mr. Stallard has, it's like running a gauntlet. I think the latest statistics may show around 20% pass, which, I mean, get approved for black lung, which is a great increase from the 3% and 4%, which existed from 1981 until 2010. But these are, there are many legal obstacles, many factual and legal obstacles exist. And I think Mr. Stallard, you've got to keep in mind, 34 years in the coal mines, and this is just. Let me ask this question. Does the Department of Labor's preamble, regulatory preamble, does that always trump a contrary expert opinion? I don't think, I don't think it does. I think the judges are free to use that. Some do, some don't. But the background. What governs that? Is it arbitrary? Is it in his discretion? Well, I'm going with the preamble. He has no training in this area, I would think. And you've got an expert on the other side. You have nothing but this coal preamble. How does he make the determination, well, I'm going to go with the doctor or I'm going to go with the preamble? Well, I think the, first of all, the preamble is, and it's described, it's based upon a large-scale study of the issues. That was, of course, with rulemaking, it was, the rules were highly publicized, many comments, and the chance to contest those. And those were contested, I guess, in court. But I think that the judges, some rely on it, some don't. I think it's a sort of an encyclopedia of research that is open to both sides. I've seen it argued by different parts of it argued by both sides. But it's not binding, of course, on the judges nor on this court or anyone. But it is a, the Department of Labor followed Congress's intent in implementing the Blackburn Law and providing a scientific basis. As best as the science world had researched all these different issues with, for example, the issues of smoking and the issues of dust inhalation. And that's a kind of a, I guess, an alternate source of information that the courts have used. Again, not all judges use that. I think they turn to that in issues that they think applies in their case. But it's very, took a long time to develop the rules and the preamble. And, of course, both sides were entitled to comment upon that and to participate in the rulemaking process. It has been, there's many cases where the use of the preamble has been upheld. And it's sort of an enigma of sorts in these cases. But I think the primary basis is very simple. The findings have to be there in the medical evidence or in the opinion of these doctors. We see, yeah. Does any minor who is a smoker and has this chronic lung disease, he's worked there for 15 years, do they always qualify for benefits or just get this presumption and that's it? No, they don't. I think it's, I think as Mr. Joyner has pointed out, the judges use a lot of, has a lot of discretion in determining that. And, of course, there has to be a disabling lung disease for the 15-year presumption to apply. Believe me. It's not disputed in this case, though, that the 15-year presumption applies, isn't it? I don't believe it is, Your Honor. Okay. Again, thank you so much. Thank you, sir. Mr. Sherry, I think you have some time left. I'll first address Judge Wynn's point, question. Yes, the Fourth Circuit can go by the preamble or it can choose to disregard the preamble, which is now 18 years old, and rely on the newer medical science that has been presented and which is included in our brief. But, Your Honor, relying on the preamble doesn't necessarily hurt us because one of the facts, and as was pointed out by Mr. Joyner, this is not Dr. Rosenberg's theory. Dr. Rosenberg is relying on page 65 of the preamble that is on the NIOSH 1995 criteria for recommended standard, which specifically adopts the same FEV1-FVC ratio analysis. That is that when you have coal mine dust, FEV1 is reduced, FVC is reduced. So, the ratio remains somewhat stable. If it is cigarette smoking, FEV1 is reduced more dramatically, FVC not so much, so the ratio is reduced. This is in the preamble. This is in the NIOSH that the preamble relies on. Secondly, Your Honor, that was not the only thing that Dr. Rosenberg relied on. And, again, the judge has dismissed his view because of the FEV1-FVC ratio. Well, no, the ALJ was very particular in saying that the experts for the coal company failed to explain why his mining history did not contribute significantly to his pneumoconiosis, and it was their burden. So he wasn't just blowing them off because of their theory. What he's saying was that when you have the presumption coming in, it's their burden to show that the mining history did not significantly play. And he said that they did not. They didn't explain it adequately. They just simply said it's all smoking. And keep in mind, too, that the ALJ hears from Dr. Zaldivar in almost every one of these cases. Sure. And so he's familiar with these doctors. I mean, he's very familiar with them. You're absolutely right. So, you know, there's a comfort level. It's not like there's an expert, you know, coming in from France or something. I mean, these doctors work regularly on these cases. You're absolutely right. Two things to say in response to what you've just said, Your Honor, and you're right. Number one, the fact is that, at least in the case of Dr. Rosenberg, he just, the ALJ got hung up on the FEV1-FVC ratio, which we admit, the Sixth Circuit has not ruled very favorably. But we believe that the Fourth Circuit should look into it because the science supports it. The preamble relying on the NIOSH supports it. Now, in the case of Dr. Rosenberg, he had a four-pronged predicate. He had severe bulbous emphysema caused by smoking, widespread destruction of capillary beds, lack of any interstitial disease on CT scan, and a grossly reduced FEV1-FVC. Let me ask you this on Dr. Rosenberg. Has his opinion been accepted on any court level? I mean, he's not a stranger to the Sixth Circuit, not to this circuit. I'm only familiar with the Sixth Circuit. The FEV1-FVC ratio in particular was not looked on favorably. And the reason for that, Your Honor, Yes. I don't think that any circuit, at least to my limited understanding, has reviewed. This would be the Second Circuit to really review it in great detail. And I didn't find it in any of the papers that were filed. And one of the mistakes that has been made by the Sixth Circuit is when you have these reduced values, sure, it indicates obstruction. There's no doubt about that. But the real issue is how do you determine etiology? How do you determine what caused the claim? And that's what Dr. Rosenberg is relying on, to determine etiology based on a sharp reduction. Okay, Mr. Sherry, your time has expired. Can I finally answer? Well, no, sir, your time has expired. Thank you so much. Thank you very much. The Court will come down to brief.
judges: Barbara Milano Keenan, James A. Wynn, Jr., John A. Gibney Jr.